UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY N. MATHEWS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 16-13958

HON.  AVERN COHN
U.S. District Judge
HON. R.  STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gregory N. Mathews ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #25] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #20] be DENIED.

## PROCEDURAL HISTORY

On January 21, 2014, Plaintiff filed an application for DIB, alleging disability as of January 1, 2007 (Tr. 107).   After the initial denial of benefits, Plaintiff requested an

administrative hearing, held on July 15, 2015 in Livonia, Michigan before Administrative Law Judge ("ALJ") Henry Perez, Jr. (Tr. 27). Plaintiff, represented by attorney Jay Sherman, testified (30-45), as did Vocational Expert ("VE") Michael E. Rosko (Tr. 45-52). On August 25, 2015, ALJ Perez found Plaintiff not disabled as of June 30, 2015, the date last insured for DIB (Tr. 12-21). On September 12, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on November 8, 2016. *Docket #1*.

## BACKGROUND FACTS

Plaintiff, born January 9, 1978, was 37 when the ALJ issued his decision (Tr. 21, 107). He completed two years of college and worked previously as a "hitch pro" for a truck rental company, was the owner of a cleaning company, and was employed as an automotive production checker (Tr. 137). He alleges disability as a result of degenerative disc disease of the neck and back, "multiple disc herniations," stenosis of the back and neck, and Attention Deficit Disorder ("ADD") (Tr. 136).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He began experiencing back problems in 2000 as a result of a car accident (Tr. 30, 37). The following year, he underwent a "microdiscectomy/laminectomy" but his condition had since become progressively worse due to degenerative disc disease (Tr. 31). He returned to work at Ford Motor Company around the end of 2002 but after 2004 worked only sporadically due to back problems (Tr. 38). He took a buyout offered in 2007 (Tr. 39). He

started a commercial cleaning business in September, 2007 but stopped work in July, 2008 when he was incarcerated (Tr. 40). He resumed working as a cleaner at the time of his July, 2012 release (Tr. 40). Plaintiff stopped working in the beginning of 2014 after sustaining injuries in another car accident (Tr. 31). He underwent surgery in July, 2014 but continued to experience the conditions of "drop foot" and other neurological weaknesses (Tr. 31). He currently took Morphine, Gabapentin, and Flexeril (Tr. 32).

On a typical day, Plaintiff took pain medication upon arising but experienced back and leg pain over the course of the day (Tr. 32). On a scale of one to ten, he generally experienced level "six or seven" pain with medication (Tr. 33). He experienced sleep disturbances as a result of pain and did not sleep more than four to five hours a night (Tr. 33). He performed self-care tasks independently but required up to 90 minutes to get ready in the morning (Tr. 34). As a result of the medication side effect of drowsiness, Plaintiff took daily naps lasting up to two hours (Tr. 34-35). Due to left foot issues, he walked slowly and was prone to stumbling (Tr. 35). He did not have physical therapy following the July, 2014 surgery (Tr. 36). He was currently planning to undergo additional back surgery (Tr. 36). He was unable to perform his job duties as a commercial cleaning business owner after the January, 2014 accident (Tr. 37).

Plaintiff was unable to sit for more than 30 minutes or stand for more than 20 minutes at a time due to back and hip pain (Tr. 42). He was unable to walk more than one block (Tr. 42). Reclining relieved his back pain temporarily (Tr. 42). He was unable to lift more than

15 pounds (Tr. 43). His former job as a cleaner required him to lift up to 25 pounds and his job as a line worker required him to lift up to 50 pounds (Tr. 43-44). He currently lived in a single-family dwelling with his mother (Tr. 44). He shopped on an infrequent basis but was able to attend doctors' appointments and run errands (Tr. 44-45).

      B.      **Medical Evidence**

### 1. Treating Sources

In February, 2007, neurosurgeon Oren Sagher, M.D. recommended spinal surgery (Tr. 280). In April, 2007, Matthew W. Smuck, M.D. found that Plaintiff was "a reasonable candidate" for spinal cord stimulator treatment (Tr. 286). In August, 2007, orthopedic surgeon Stanley Lee, M.D. diagnosed Plaintiff with congenital cervical canal stenosis and C7 radiculopathy (Tr. 278). Dr. Lee recommended "nonoperative measures" (Tr. 278). May, 2008 treating records by Joyce Leon, M.D. note Plaintiff's report of worsening back and lower extremity pain (Tr. 329). An August, 2008 MRI of the cervical spine shows disc protrusions at C4-C5 and C6-C7 (Tr. 346-347). December, 2008 records by Dr. Leon note Plaintiff's report of fatigue after beginning work on the "graveyard" shift (Tr. 335).

In October, 2012, Sara A. Platte, M.D. examined Plaintiff for the first time, noting his report of chronic neck and back pain (Tr. 220). Plaintiff reported pain upon walking, sitting, or standing for "long periods" (Tr. 220). Dr. Platte observed that Plaintiff was not in acute distress and was "quite muscular" (Tr. 221). Plaintiff demonstrated 5/5 upper extremity strength (Tr. 221). Plaintiff reported that he was "quite active" and worked "on a regular

basis" (Tr. 221). In December, 2012, Plaintiff told Dr. Platte that his current sinus problems were due to "the cleaning agents that he use[d] in his job" (Tr. 226). The same month, Plaintiff was prescribed physical therapy for renewed back problems (Tr. 208). Therapy records from the following month state that Plaintiff reported "'slight back issues'" causing problems walking and sleeping (Tr. 209). Therapy observations include decreased strength and range of motion and incorrect alignment (Tr. 209). Plaintiff was given a "good" prognosis (Tr. 209). Discharge records indicate no change in his condition, noting "limited effort for posture and body mechanics" (Tr. 211).

     The same month, Marc L. Strickler, M.D. noted that recent MRIs of the lumbar spine showed "significant" stenosis (Tr. 215, 249-250, 272-273). Plaintiff demonstrated full strength in all extremities but a limited range of spinal motion (Tr. 214). Dr. Platte's notes from the following month state that physical therapy did not relieve the neck or back problems (Tr. 230). She observed that Plaintiff moved more slowly than on previous visits (Tr. 230). Plaintiff requested "another round of radio frequency ablation" (Tr. 231). Dr. Platte opined later the same month that Plaintiff "may be reaching a point at which he needs to have a lumbar spinal fusion" (Tr. 232). She characterized the deterioration shown on the January, 2013 MRI as "severe" (Tr. 232). Plaintiff reported that he was experiencing urinary difficulties but was "very leery about having surgery" (Tr. 232). An MRI performed the last week of the month showed "severe spinal disease with multiple areas of disc abnormalities, degenerative disease and areas of severe spinal canal stenosis (Tr. 234). In April, 2013, Dr.

Strickler noted Plaintiff's report that the injections were not working (Tr. 218). Dr. Strickler stated that Plaintiff would "need fusion [surgery]" assuming that Plaintiff consented to surgery (Tr. 218). Dr. Strickler noted that Plaintiff "[felt] not ready for surgery" and preferred "to postpone as long as possible" (Tr. 218). In July, 2013, Dr. Platte noted that Plaintiff's condition was unchanged (Tr. 235). Multiple epidural injections were administered without complications between May and September, 2013 (Tr. 254-267). Dr. Platte's October and December, 2013 records note Plaintiff's report of worsening back pain (Tr. 303, 307, 314).

In January, 2014, Plaintiff sought emergency treatment after sustaining injuries in a car accident (Tr. 289). Imaging studies of the left shoulder were unremarkable (Tr. 288). Plaintiff denied a head trauma or loss of consciousness (Tr. 294-295). Treating records from the following month note Plaintiff's report that his work as the owner of a car dealership was affected by problems standing for extended periods (Tr. 384). April, 2014 records also state that Plaintiff worked "full-time as owner/operator of used car dealership" (Tr. 381). A May, 2014 MRI of the lumbar spine showed a new disc bulge a L4-L5 with compression of the nerve root (Tr. 402).

The following month, Plaintiff exhibited a left foot drop (Tr. 376). Later the same month, Plaintiff underwent a left L4-L5 microdiscectomy (Tr. 396). Post-surgical records from the following month note that Plaintiff's leg pain was gone but he experienced intermittent numbness (Tr. 373). October, 2014 epidural injection records note a diagnosis

of "failed back syndrome" (Tr. 393). An MRI from the following month showed either scar tissue, or, "residual disc material" from the June, 2014 procedure (Tr. 367, 391). In January, 2015, Plaintiff reported level "twenty" back pain on a scale of one to ten (Tr. 366). Longtime treating orthopedic surgeon Jason Brodkey, M.D. recommended fusion surgery (Tr. 365). The following month, Plaintiff reported back, buttock, and left leg pain (Tr. 363).

### 2. Non-treating Sources

A May, 2007 independent evaluation by Steve R. Geiringer, M.D. contains observations of mild range of motion limitations in lumbar flexion and extension (Tr. 352). Dr. Geiringer noted that multiple epidural injections had not improved Plaintiff's condition (Tr. 355). He remarked that in July, 2006, Plaintiff's prescription for opioid medication had been terminated after he was caught selling the prescribed medication to an undercover officer (Tr. 355). He concluded that Plaintiff's spinal problems predated a May, 2005 car accident (Tr. 355).

In March, 2014, Thuy Nguyen, D.O. performed an independent examination, noting Plaintiff's ability to walk without a cane, 5/5 muscle strength, and a full range of motion (Tr. 358-260). He noted a lack of muscle atrophy and neurological symptoms (Tr. 358). He concluded that Plaintiff could lift up to 55 pounds, carry up to 50 pounds, and ambulate for four blocks (Tr. 360).

### C. Vocational Expert Testimony

VE Michael E. Rosko classified Plaintiff's former work as a motor vehicle assembler as unskilled and exertionally medium; parts inspector, semiskilled/light (medium as performed); and cleaning service operator, unskilled/heavy (medium as performed)[1] (Tr. 46-48).

The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [A]ssume that such a person has an exertional limitation of lifting 50 pounds occasionally . . . 25 pounds frequently, sitting, standing, walking six of eight hours; pushing and pulling as much as he can lift and carry. And if we put this individual at the semiskilled level, could such a person be able to perform Claimant's past relevant work? (Tr. 48).

The VE replied that the above limitations would allow for Plaintiff's past relevant work as a parts inspector and motor vehicle assembler (Tr. 49). The VE testified that if the same individual were limited to semiskilled work and lifting or carrying "less than 10 pounds

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

occasionally [and] less than 10 pounds frequently," and, were additionally limited to sitting for six hours and standing/walking for two hours with only occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs with a preclusion on work with ladders or scaffolds, the hypothetical individual would be unable to perform Plaintiff's past relevant work (Tr. 49). The VE testified however that the individual could perform the unskilled, sedentary work of a lobby attendant, gate attendant, or security monitor (800 jobs in the State of Michigan); document scanner (200); parking facility cashier (500); and various bench positions such as assembler or sorter (2,500) (Tr. 50).

The VE stated that if Plaintiff's testimony regarding his exertional limitations were fully credited (including the allegations that he required frequent position changes) he would be able to perform the parking cashier position and 80 percent of the bench positions (Tr. 50-51). However, the VE testified that if Plaintiff's testimony regarding the non-exertional limitations of pain, drowsiness, and the need for daily naps were credited, no work would be available (Tr. 51-52). The VE concluded his testimony by stating that his findings were consistent with the information found in the *Dictionary of Occupational Titles* except for the testimony pertaining to the need for a sit/stand option, which was based on his own professional experience (Tr. 52).

### D. The ALJ's Decision

Citing the medical records, ALJ Perez determined that through the date last insured of June 30, 2014, Plaintiff experienced the severe impairment of "degenerative disc disease"

but that the condition did not meet or medically equal one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 16-17). The ALJ found that Plaintiff retained the Residual Functional Capacity to perform semiskilled, sedentary work with the following limitations:

> Claimant [can] occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds and he is limited to semiskilled work (Tr. 17).

Citing the VE's job findings, the ALJ found that although Plaintiff was unable to perform any past relevant work, he could perform the exertionally sedentary, unskilled work of a lobby/gate attendant; document scanner; parking facility cashier; and assembler (Tr. 21, 50).

The ALJ discounted Plaintiff's alleged degree of limitation. He cited the December, 2012 and January, 2013 physical therapy records, noting that Plaintiff characterized his physical problems as "slight back issues" (Tr. 19). The ALJ acknowledged "remarkable diagnostic scans," but concluded that the physical examinations for that period "were not significantly remarkable" (Tr. 19).

The ALJ noted that the February and April, 2014 treating records documented that Plaintiff owned "his own used car dealership, despite no reported earnings" (Tr. 19). He acknowledged that May, 2014 records supported the need for a microdiscectomy but that the procedure was completed the following month (Tr. 19). The ALJ noted that fusion surgery was recommended subsequent to the date last insured of June 30, 2014 (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes two arguments for remand, contending first that the RFC crafted by the ALJ had "no support in the medical record." *Plaintiff's Brief,* 13-18, *Docket #20,* Pg ID 491. Second, he argues, in effect, that the ALJ erroneously determined that the back condition did not worsen until after the date last insured ("DLI") of June 30, 2014. *Id.* at 19-22.

**A. The RFC**

Contrary to Plaintiff's first argument, the ALJ's rationale for the RFC is adequately explained and supported by the record. In providing a rationale for the RFC, an ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts" including objective findings, non-medical evidence, and activities of daily living." SSR 96-8 1996 WL 374184, at *7 (July 2, 1996). "'Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS*, 251 F.3d 153, slip op., 4 (Table)(3rd Cir. December 19, 2000)(punctuation added)). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.' " *Id.* (*citing Bencivengo* at slip op. at 5).

    The ALJ did just that. He provided an accurate history of Plaintiff's back problems from 1998 forward, noting that a significant number of the records undermined Plaintiff's claim that he was unable to perform even sedentary work: 2007 records showing a normal gait, full muscle strength, and recommendation for conservative treatment (Tr. 18); December, 2012 and January, 2013 records showing continued work as a cleaner despite reports of ongoing back pain (Tr. 19); 2014 medical records showing that he bought and sold used cars on a full-time basis (Tr. 19); and Dr. Nguyen's March, 2014 conclusion that Plaintiff was capable of lifting 55 pounds (Tr. 19). Although none of the medical sources stated that Plaintiff was limited to sedentary work, the ALJ noted, in effect, that the finding that Plaintiff could perform exertionally medium was tempered by treating recommendations for a microdiscectomy prior to the June, 2014 procedure (Tr. 19). The ALJ reasoned that a

restriction to sedentary work accompanied by postural restrictions was appropriate for the following reasons: (1) Plaintiff's long-term complaints of "chronic back pain," (2) clinical diagnostic tests and imaging studies showing "generally . . . mild to moderate issues," (3) Plaintiff's participation in physical therapy and, (4) the June, 2014 back surgery (Tr. 20).

Plaintiff disputes the ALJ's finding that the back issues were generally "mild to moderate, " noting that the lumbar spine MRIs also showed "severe" stenosis. *Plaintiff's Brief* at 17 (*citing* Tr. 20). However, the ALJ's summation of the diagnostic studies including the clinical findings (showing mostly mild symptoms) and imaging studies (showing unremarkable, moderate, and some severe findings) does not misstate the medical evidence. Notably, while the December, 2012 and early 2013 MRIs of the lumbar spine showed severe stenosis, Plaintiff referred to his problem as "slight back issues" as of January, 2013.

Finally, while Plaintiff also notes that none of the medical sources made a finding that he could perform sedentary work, the lack of a medical opinion supporting an RFC for sedentary work does not provide grounds for remand. *See Rudd v. Commissioner of Social Sec.*, 531 Fed.Appx. 719, 726–27 (September 5, 2013)(*citing Coldiron v. CSS*, 391 Fed.Appx. 435, 439 (6th Cir. August 12, 2010))("'The Social Security Act instructs that the ALJ, not a physician, ultimately determines a claimant's RFC.... An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding'"); 20 C.F.R. § 404.1527(d)(2)(determination of the RFC

is reserved to the Commissioner).² Because the ALJ provided a well supported and well explained rationale for the RFC, Plaintiff's argument should be rejected.³

### B. Whether Plaintiff was Disabled on or Before June 30, 2014

Plaintiff also argues that the ALJ mischaracterized the evidence created in the months following the June 30, 2014 expiration of benefits. *Plaintiff's Brief* at 19-22. He contends that the post-expiration records support the conclusion that Plaintiff's disability began prior to June 30, 2014. *Id.* In particular, he disputes the ALJ's statement that "a fusion was recommended [in the months following the expiration of benefits] but it was "after the date last insured." *Id.* at 21 (*citing* Tr. 19). Plaintiff points out that fusion surgery was recommended on "more than one occasion *before* Plaintiff's DLI." *Plaintiff's Brief* at 21 (emphasis in original)(*citing* Tr. 314 , 384).

As noted above, a finding of disability is premised on the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

²Moreover, although Plaintiff also faults the ALJ for citing the ability to vacuum for two hours a week in support of the non-disability finding, the ALJ did not find that the ability to vacuum two hours a week was dispositive of the disability claim (Tr. 17). Rather, the ALJ simply listed vacuuming "for two hours [a week] with frequent breaks" among with Plaintiff's other self-professed limitations (Tr. 17).

³
Plaintiff's argument is particularly specious given that none of his treating sources imposed exertional or non-exertional restrictions on his work-related abilities. Moreover, as discussed above, the one consultative assessment of Plaintiff's exertional abilities greatly exceeds the restriction to sedentary work found in the RFC.

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, Plaintiff would be entitled to DIB provided he could establish the onset of a disabling condition on or before the DLI of June 30, 2014.

As an initial matter, substantial evidence supports the ALJ's finding that Plaintiff was not disabled on or before June 30, 2014. The ALJ noted that the records created one month after the DLI (July, 2014) state that Plaintiff's condition improved after the microdisectomy (Tr. 19). Citing the January and February, 2015 treating records, the ALJ noted fusion surgery "was recommended, but this was after the date last insured"(Tr. 19 *citing* 363-365).

The ALJ's summation and conclusions regarding the post-expiration records are consistent with my own review of the transcript. The July, 2014 treating notes indicate an improvement in Plaintiff's condition (Tr. 373). Dr. Brodkey's July, 2014 treating records note Plaintiff's report that his leg pain was gone and a finding of 5/5 strength (Tr. 373). The ALJ's finding that fusion surgery was "off the table," at least for a time, is also supported by Dr. Brodkey's July, 2014 statement that "We have talked about fusion in the past, and in his case it would be multiple levels. He would like to avoid it, as would I" (Tr. 373). The September, 2014 records note that while Plaintiff continued to experience back pain, the June, 2014 procedure resulted in an improvement in leg pain (Tr. 368). The ALJ did not err in noting that the records created in the months directly following the microdisectomy support the conclusion that Plaintiff's condition improved for an appreciable period.

Plaintiff's argument that the ALJ erred by noting that fusion surgery was not

recommended until January, 2015 is a red herring. To be sure, Plaintiff correctly notes that treating sources in October, 2013 and February, 2014 had already recommended fusion surgery (Tr. 314, 384). My own review of the records also shows that treating sources recommended fusion surgery as early as January and April, 2013 (Tr. 218, 232).

However, the ALJ's observation that a recommendation for fusion post-dated the DLI is contained in a paragraph devoted exclusively to the post-DLI records. While the ALJ does not reference that pre-DLI recommendations for fusion surgery, he provided a thorough summation of the records from 2007 forward (Tr. 18-19). In summarizing the records post-dating the DLI, it cannot be inferred that he erroneously believed that fusion surgery was recommended for the first time in 2015. Plaintiff's argument is further weakened by the fact that the earliest recommendation for fusion surgery subsequent to the DLI (January, 2015) post-dates the expiration day by approximately seven months.

Moreover, while the records from the relevant period contain recommendations for fusion surgery, the recommendations (made as early as February, 2013) do not equate to a finding of disability. A consultative examiner found less than four months prior to the DLI that Plaintiff was capable of performing exertionally medium work (Tr. 360). The ALJ noted that during the period prior to the expiration of benefits, Plaintiff worked as a cleaner, reported only "slight back issues," and exhibited full strength (Tr. 18-19, 209, 221). The ALJ cited Plaintiff's February and March, 2014 report to his treating sources that he worked full time buying cars at auction and reselling them (Tr. 19, 381, 384). While the imaging studies

created during the relevant period support Plaintiff's allegations of limitation, the ALJ did not err in finding that evidence of ongoing and full-time work activity strongly undermined his allegations of disability (Tr. 19).

In closing, while my recommendation should not be interpreted as trivializing Plaintiff's difficulties, the determination that he could perform a range of sedentary work is well within the "zone of choice" accorded the administrative fact-finder and as such, should be remain undisturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #25] be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #20].

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 28, 2017

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 28, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen